IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ANTHONY F. FAULKNER,                §
                                    §
                    Plaintiff,      §
                                    §  Civil Action No. 3:07-CV-2074-D
VS.                                 §
                                    §
DEPARTMENT OF STATE HEALTH          §
SERVICES, et al.,                   §
                                    §
                    Defendants.     §

MEMORANDUM OPINION
AND ORDER

In this action by a terminated state employee, the court must
decide whether a reasonable jury could find that the plaintiff has
met the causation element of his claim under the Texas
Whistleblower Act ("Whistleblower Act"), Tex. Gov't Code Ann.
§§ 554.001-.010 (Vernon 2004), whether the plaintiff can bring
constitutional claims under 42 U.S.C. § 1983 against state agencies
and against state officials sued in their official capacities, and
whether the individual defendants sued in their individual
capacities are entitled to qualified immunity. Concluding that
plaintiff's claims fail on these grounds, the court grants
defendants' motion for summary judgment and dismisses this case
with prejudice.[1]

_____

[1]Defendants filed a motion to dismiss concurrently with their
motion for summary judgment. Because the court is granting summary
judgment for defendants, it need not address the motion to dismiss.

Plaintiff Anthony Faulkner ("Faulkner") brings this action alleging violations of the Whistleblower Act and the First and Fourteenth Amendments against defendants Department of State Health Services ("DSHS"), Terrell State Hospital ("Terrell State Hospital"), David L. Lakey, M.D. ("Dr. Lakey") (the Commissioner of DSHS), Fred Hale ("Hale") (the Superintendent of Terrell State Hospital), and Clent Holmes, R.N. ("Holmes") (the Risk Management Coordinator for Quality Management at Terrell State Hospital). Faulkner was employed as a security officer at Terrell State Hospital for 18 months.[2] He avers that defendants strongly disliked him because of letters he wrote to Governor Rick Perry complaining of violations of law that he had observed at Terrell State Hospital. On August 2, 2007 Faulkner lodged a Health Information Privacy complaint with the Office of Civil Rights of the U.S. Department of Health and Human Services ("HHS"). He alleged that defendants had violated the federal Privacy Rule promulgated under the Health Information Portability and Accountability Act of 1996 ("HIPAA Privacy Rule") by leaving in a public area two admissions logs that contained the names and admission dates of Terrell State Hospital patients. Faulkner's

---

[2]The court recounts the evidence in a light favorable to Faulkner as the summary judgment nonmovant and draws all reasonable inferences in his favor. *E.g., U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).

employment at Terrell State Hospital was terminated on August 9, 2007.

Faulkner brought a *pro se* lawsuit in Texas state court, alleging that defendants had violated the Whistleblower Act by firing him in retaliation for his HHS complaint, and asserting unspecified violations of the First and Fourteenth Amendment. After defendants removed the case to this court, Faulkner obtained counsel.

II

The court first addresses Faulkner's Whistleblower Act claim against Dr. Lakey, Hale, and Holmes. These defendants maintain, and Faulkner does not controvert, that they cannot be liable under the Whistleblower Act because the Act provides a private cause of action only against employing state agencies and not against supervisors or other employees in their individual capacities. The court agrees. *See Hoskins v. Kaufman Indep. Sch. Dist.*, 2003 WL 21517830, at *4 (N.D. Tex. June 30, 2003) (Fitzwater, J.) ("The Whistleblower Act does not create a cause of action against employees of a public agency." (internal quotation marks omitted)). Accordingly, the court dismisses the Whistleblower Act claims against Dr. Lakey, Hale, and Holmes to the extent that Faulkner sues them in their individual capacities.

## III

The court turns next to Faulkner's Whistleblower Act claim against DSHS and Terrell State Hospital.[3]

### A

The Whistleblower Act exists to "promote open government by preventing retaliation against public employees who report unlawful activity and to secure lawful conduct by public officials." *Wyman v. City of Dallas*, 2004 WL 2100257, at *12 (N.D. Tex. Sept. 21, 2004) (Fitzwater, J.) (citing *Duvall v. Tex. Dep't of Human Servs.*, 82 S.W.3d 474, 478 (Tex. App. 2002, no pet.)). The statute provides:

> A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.

---

[3]Although Faulkner's petition states no claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, he inexplicably devotes much of his briefing to discussing retaliation claims under Title VII and corresponding case law, contending that he has established a valid Title VII claim. Because Faulkner obtained legal counsel over six months before the deadline for seeking leave to amend pleadings, yet still did not move for leave to add a Title VII claim, the court will address his Title VII arguments only to the extent that they are relevant to his Whistleblower Act claim. The court declines to consider an independent Title VII claim because Faulkner did not plead it. *See, e.g., Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *1 n.1 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) (citing *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").

Tex. Gov't Code § 554.002(a).

> In order to prevail under the Texas Whistleblower Act, a plaintiff must demonstrate: 1) he is a public employee; 2) he acted in good faith in making a report; 3) the report involved a violation of law by an agency or employee; 4) the report was made to an appropriate law enforcement authority; and 5) he suffered retaliation.

*Hoskins*, 2003 WL 21517830, at *4 (citing *Tharling v. City of Port Lavaca*, 329 F.3d 422, 428 (5th Cir. 2003)).

Because defendants will not have the burden of proof at trial on Faulkner's Whistleblower Act claim, they need only point the court to the absence of evidence regarding any essential element of the claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once they do so, Faulkner must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for Faulkner. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Faulkner's failure to produce proof as to any essential element renders all other facts immaterial. *Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if Faulkner fails to meet this burden. *Little*, 37 F.3d at 1076.

The parties' dispute centers on two issues: whether Faulkner's HHS complaint reported a violation of law, and whether that report was the cause of Faulkner's termination. The court will consider each contention in turn.

B

Defendants maintain first that Faulkner cannot show that his HHS complaint reported a violation of law. They contend that leaving the admissions logs in a public area did not violate the HIPAA Privacy Rule but was an incidental use or disclosure of protected health information permitted under that rule. *See* 45 C.F.R. § 164.502(a)(1)(iii) (2008) (permitting use or disclosure of protected health information incident to otherwise-permitted use or disclosure, provided that entity has in place minimum necessary safeguards to protect privacy of protected health information). Faulkner posits that the mere fact that the admissions logs were left in a public area demonstrates that Terrell State Hospital did not have in place the minimum necessary safeguards and therefore violated the HIPAA Privacy Rule.

The court need not resolve whether defendants violated the HIPAA Privacy rule because it disagrees with defendants' theory that a plaintiff cannot establish a prima facie case under the Whistleblower Act if the conduct reported was not in fact a violation of law. Instead, it is only necessary that the employee honestly believe that the conduct he reported was a violation of

law and that the employee's belief be reasonable in light of his training and experience. *See Wichita County, Tex. v. Hart*, 917 S.W.2d 779, 784-86 (Tex. 1996); *see also Bowers v. City of Galveston*, 2009 WL 529608, at *10 (S.D. Tex. Feb. 26, 2009) ("[T]he law provides that an employee may seek relief despite the fact that an investigation revealed that technically no legal violation had occurred."); *Lastor v. City of Hearne*, 810 S.W.2d 742, 744 (Tex. App. 1991, writ denied) (rejecting literal interpretation of "violation of law" as inconsistent with legislative intent). Therefore, even assuming that defendants did not violate the HIPAA Privacy Rule by leaving the admissions logs in a public area, they are not entitled to summary judgment on that basis.

C

Defendants contend second that Faulkner's Whistleblower Act claim must be dismissed because he cannot show that his employment was terminated because of the HHS complaint.

1

Defendants maintain that Faulkner was discharged because, despite adequate training, he repeatedly failed to comply with Texas law and Terrell State Hospital rules that required him to report to the Texas Department of Family and Protective Services ("DFPS") suspected abuse, neglect, or exploitation of patients. *See* Tex. Hum. Res. Code Ann. § 48.051 (Vernon 2001); 25 Tex. Admin. Code § 417.505 (2008); 40 Tex. Admin. Code § 711.201 (2008).

To support their position, defendants offer, *inter alia*, Hale's affidavit. According to Hale, Faulkner received instruction regarding reporting requirements both during his employment orientation and on several occasions between July 2006 and July 2007, including one time in August 2006 when Faulkner's supervisor required him to retake a mandatory training course. Hale avers that on July 24, 2007 Faulkner reported to him a situation that Faulkner believed had created a hazard for a Terrell State Hospital patient, but Faulkner refused to say whether he had reported this concern to DFPS. Hale contacted DFPS and learned that no such report had been made. Hale also states that, on July 30, 2007, he learned that Faulkner had drafted a letter dated July 16, 2007 and addressed to Governor Perry that detailed several instances of potential patient abuse or neglect. Hale again contacted DFPS and was informed that Faulkner had not reported these concerns. Hale avers that he made the decision to terminate Faulkner's employment on July 30, 2007, and that when he did so, "[he] did not know [Faulkner] submitted or planned to submit a complaint to the Department of Health and Human Services Office of Civil Rights." Ds. App. 2. Instead, his decision to terminate Faulkner "was based solely on information, observation, and/or evidence that was not related to the fact that he reported or planned to report an alleged violation of law." *Id.*

In response, Faulkner proffers his own affidavit, the content

of which the court essentially recounts in full in a footnote.[4]

_____

[4]Except for the caption and jurat, the affidavit states in its
entirety as follows:

    1.    My name is Anthony F. Faulkner.  I am
over the age of 21 years, of sound mind,
and capable of making this affidavit.
The facts stated in this affidavit are
within my personal knowledge and are true
and correct.

    2.    At the time I filed my Original Petition
I was acting as a layperson and I am not
a lawyer and not trained in the law and I
did not have the benefit of legal
counsel.  I was acting as a Pro Se
litigant, therefore, I am asking that the
court permissively construe my
allegations in the matter of my lawsuit
for wrongful termination.

    3.    It is untrue that I was dismissed from my
employment as a Security Officer on or
about April 16, 2007 because I repeatedly
failed to file a report of suspected
abuse, neglect or exploitation of Terrell
State Hospital clients.  On the contrary
my firing was retaliatory and punitive
and wrong.  The management of that
institution retaliated me against [sic]
and I, at all times had performed my
duties, as was my responsibility.  I
abided faithfully to TEX. HUMAN RESOURCES
CODE ANN. Section 48.051; 25 Tex. Admin.
Code Ann. Section 711.201, and Terrell
Standard Operating Procedure, Section 1-
22 in all respects.  I made all reports
as required.  I should not have been
subjected to discipline for violations of
the foregoing regulations as I did not
violate any of them and did nothing
wrong.

    4.    I received reporting requirements as did
other employees on or about 13 March 2006
and several other times thereafter and I

In sum, he avers that he at all times performed reporting duties,
abided by state and Terrell State Hospital regulations in all
respects and made all required reports, was never warned or
reprimanded for not doing his job appropriately, should not have
been disciplined because he did nothing wrong, and that his firing

--------

faithfully performed all requirements.
In fact, I discussed suspected cases of
abuse and the requirements for such
reporting in my duties as a Security
Officer at Terrell on several occasions
in 2006 and 2007. I [sic] each case I
was not warned or reprimanded as I was
doing my job appropriately.

5.    I believe that I was wrongfully
terminated and dismissed after a meeting
with Clent Holmes on or about 9 August
2007 for allegedly failing to report
abuse and to comply with the policies for
reporting such. I categorically deny
that I was complicit in any way in such
failure and it is my conviction that my
dismissal was retaliatory and punitive.

6.    On or about 24 July 2007 I reported to
management an incident believed to be in
violation of procedure to DFPS in
accordance with 25 Tex Admin Code Section
417.505 and made other reports, as
appropriate, at all times thereafter
until my dismissal. I believe I have
been wrongfully terminated and seek my
day in court. I have acted in good faith
and within my responsibility as Security
Officer at Terrell and I believe that I
have complied with all rules, laws and
regulations within my responsibility and
I deny any and all allegations against
me.

7.    I declare under penalty of perjury that
the foregoing is true and correct.

was retaliatory, punitive, and wrongful.  Thus Faulkner contests defendants' stated reasons for his termination and maintains that they are merely pretextual.

2

To establish the causation element of his Whistleblower Act claim, Faulkner must show that his conduct was "such that, without it, the employer's prohibited conduct would not have occurred when it did." *Tex. Dep't of Human Servs. of the State of Tex. v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1994).  Texas courts have described this as a "but for" causation standard.  *See, e.g., City of Fort Worth v. Johnson*, 105 S.W.3d 154, 163 (Tex. App. 2003, no pet.).

> Circumstantial evidence may be sufficient to establish a causal link between the adverse employment action and the reporting of illegal conduct.  Such evidence includes: (1) knowledge of the report of illegal conduct, (2) expression of a negative attitude toward the employee's report of the conduct, (3) failure to adhere to established company policies regarding employment decisions, (4) discriminatory treatment in comparison to similarly situated employees, and (5) evidence that the stated reason for the adverse employment action was false.

*City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 69 (Tex. 2000).

Although Faulkner fails to mention it in his briefing, he is entitled to the benefit of the Act's presumption of causation because he was terminated within seven days of making the HHS complaint.  If the pertinent adverse personnel action is taken within 90 days of an employee's report, the "adverse personnel

action is presumed, subject to rebuttal, to be because the employee made the report." Tex. Gov't Code § 554.004(a). "The statutory presumption is rebutted and becomes a nullity" once a defendant produces sufficient evidence to support a finding that it did not take the adverse personnel action because of the employee's report. *Wyman*, 2004 WL 2100257, at *15 (citing *Tex. A&M Univ. v. Chambers*, 31 S.W.3d 780, 784-85 (Tex. App. 2000, pet. denied)).

The presumption does not aid Faulkner in surviving summary judgment, however, because Hale's affidavit is sufficient to rebut the presumption. Hale's testimony supports a finding that Faulkner was terminated because he failed more than once to report concerns regarding patient care to DFPS, and that Hale did not know of Faulkner's actual or planned HHS complaint when he decided to fire Faulkner.

3

Faulkner has failed to adduce evidence that would enable a reasonable jury to find a causal link between his whistleblowing activity and his termination.[5] Reduced to its essence, Faulkner's affidavit merely avers, in repetitious and conclusory fashion and at a very general level, that he was aware of and faithfully

---

[5]At the summary judgment stage, of course, it is not necessary that Faulkner prove his claim or prove causation. But because defendants have pointed to the absence of evidence that supports the cause of action, Faulkner must adduce evidence that would permit a reasonable jury to find in his favor on the essential element of causation.

complied with all state and Terrell State Hospital requirements that he report suspected abuse, neglect, or exploitation at Terrell State Hospital, and that he was discharged as an act of retaliation.[6] With one exception (which is still inadequate for another reason), Faulkner does not refer to any specific reports (other than to say there were several in 2006 and 2007) or identify to whom they were made. This evidence is insufficient to raise a genuine issue of material fact. *See, e.g., Marshall ex rel. Marshall v. East Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 324 (5th Cir. 1998) (holding that affiant's "conclusory, unsupported assertions" do not create genuine issue of material fact).

In ¶¶ 5 and 6 of his affidavit, Faulkner addresses a specific report that he made and his August 9, 2007 meeting with Holmes. Faulkner avers that, on or about July 24, 2007, he reported to management of DFPS[7] an incident that he believed violated

---

[6]Defendants move to strike certain statements in Faulkner's affidavit as unsubstantiated factual conclusions, belief, opinion, and speculation. Because the court grants summary judgment for defendants notwithstanding the evidence to which objection has been made, the court denies this motion as moot.

[7]Faulkner states in ¶ 6 that "[o]n or about 24 July 2007 I reported *to management* an incident believed to be in violation of procedure to DFPS in accordance with [Tex. Admin. Code § 415.505]." P. App. 2 (emphasis added). Although this statement is ambiguous concerning whether he reported the alleged incident to the management of Terrell State Hospital or to the management of DFPS, in deciding this motion the court will draw the inference that Faulkner reported the incident to management of DFPS because doing so is favorable to him as the summary judgment nonmovant.

procedure, and that he made other reports until his dismissal. And he states that he believes he was wrongfully terminated and dismissed after a meeting with Holmes on or about August 9, 2007 for failing to report abuse and to comply with the reporting policies, which he denies. In other words, Faulkner merely recounts that he made a report on July 24, 2007 and made other reports until his dismissal, and then states *his belief* that he was wrongfully terminated and dismissed on or about August 9, 2007 for allegedly failing to report abuse and to comply with the policies for reporting. But a plaintiff's mere subjective belief, without more, is not enough to avoid summary judgment. *See, e.g., Nichols v. Lewis Grocer*, 138 F.3d 563, 570 (5th Cir. 1998) ("[A] subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief.") (quoting *Little v. Republic Refining Co.*, 924 F.2d 93, 96 (5th Cir. 1991)); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) ("[A]n employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason."). Moreover, and critically in the context of the causation element, Faulkner's affidavit does not raise a fact issue regarding whether Hale *was even aware* of Faulkner's intention to file (or his filing of) the HHS complaint when Hale made the decision to terminate Faulkner's employment.

*Cf. Tharling*, 329 F.3d at 430-31 (holding that no basis existed for reasonable jury to find causal link between plaintiff's termination and his whistleblower reports where there was no evidence that decisionmaker was aware of the reports "at the time it made the termination decision"). Although Faulkner avers that he reported an incident to management on or about July 24, 2007, he does not state that he informed management (including decisionmaker Hale) that he planned to file, or had filed, the HHS complaint. He has failed to introduce evidence that Hale (or anyone else) knew that he had engaged in conduct that the Whistleblower Act protects. Therefore, Faulkner has not adduced evidence that would permit a reasonable jury to find that defendants discharged him in retaliation for his HHS complaint or any other protected activity.[8]

Because defendants have pointed the court to the absence of evidence of causation, and Faulkner has not identified a genuine issue of material fact regarding that element, the court grants summary judgment for defendants on Faulkner's Whistleblower Act claim.

---

[8]In his response brief, Faulkner advances another theory of retaliation, contending that defendants fired him because he wrote letters to Governor Perry expressing concerns about patient care at Terrell State Hospital. Defendants reply that Faulkner cannot rely on this argument because his petition explicitly states that the letters were not sufficient for his termination. Even if the court assumes that Faulkner's theory is properly pleaded, defendants are still entitled to summary judgment because a reasonable jury could not find that Faulkner was terminated for any reason other than the one that defendants articulated: his failure to make required reports to DFPS.

IV

The court now turns to Faulkner's constitutional claims.

A

Faulkner does not style his First and Fourteenth Amendment claims as being brought under 42 U.S.C. § 1983. Nonetheless, the court construes them as such because § 1983 is the only proper remedial mechanism for asserting these claims, *see, e.g., Hearth, Inc. v. Department of Public Welfare*, 617 F.2d 381, 382-83 (5th Cir. 1980) (per curiam),[9] and Faulkner filed his state-court petition *pro se*. Defendants move for summary judgment on three grounds: that these claims are barred by Eleventh Amendment immunity; that defendants are not "persons" against whom Faulkner may maintain a § 1983 damages action; and that Dr. Lakey, Hale, and Holmes are entitled to qualified immunity. Faulkner devotes all of his response brief to the Whistleblower Act claim and does not respond to any of these arguments.

B

The Eleventh Amendment bars private suits in federal court against states, including state agencies, unless the state has waived, or Congress has abrogated, the state's sovereign immunity.

_____

[9]"Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates," and an "underlying constitutional or statutory violation is a predicate to liability under § 1983." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citations and internal quotation marks omitted) (quoting *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)).

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984); *Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). Congress has not abrogated the states' sovereign immunity under § 1983. *Quern v. Jordan*, 440 U.S. 332, 340-45 (1979); *Aguilar*, 160 F.3d at 1054. But a state waives its immunity from suit in federal court when it removes a case from state to federal court and thereby voluntarily invokes the federal court's jurisdiction. *See Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 242 (5th Cir. 2005) (holding that the waiver-by-removal rule "applies generally to any private suit which a state removes to federal court"). The court need not decide the Eleventh Amendment immunity issue, however, because Faulkner fails to state a valid § 1983 claim against these defendants. *See Jarvis v. La. State Univ. Health Scis. Ctr.*, 2007 WL 2993862, at *2-*3 (E.D. La. Oct. 10, 2007) (declining to address Eleventh Amendment immunity where plaintiff had not stated valid § 1983 claim). Neither a state agency nor a state official sued in his official capacity is a "person" against whom a § 1983 damages action may be brought. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989); *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007).[10] Accordingly, the court grants summary judgment dismissing Faulkner's constitutional claims against DSHS, Terrell

---

[10]"[S]tate officials in their official capacities, when sued for injunctive relief, are 'persons' under § 1983." *Stotter*, 508 F.3d at 821. Faulkner does not seek injunctive relief.

State Hospital, and, to the extent that they are sued in their official capacities, his claims against Dr. Lakey, Hale, and Holmes.

C

To the extent that Faulkner sues Dr. Lakey, Hale, and Holmes in their individual capacities, the court holds that they are entitled to summary judgment based on qualified immunity.

"Qualified immunity protects government officials performing discretionary functions from civil liability if their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would have known." *Singleton v. St. Charles Parish Sheriff's Dep't*, ___ Fed. Appx. ___, 2009 WL 106507, at *4 (5th Cir. Jan. 16, 2009) (per curiam) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To decide whether defendants are entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiffs as the parties asserting the injuries, the facts they have alleged show that defendants' conduct violated a constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct

violated a constitutional right? This must be the initial inquiry."")).[11] "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "'The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the

---

[11]The Supreme Court recently held that *Saucier*'s two-step procedure for determining qualified immunity is no longer mandatory. *See Pearson v. Callahan*, ___ U.S. ___, 129 S.Ct.808, 818 (2009). Specifically, courts are free to consider *Saucier*'s second prong without first deciding whether the facts show a constitutional violation. *Id*. The "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id*. at 821. The court in its discretion has decided to follow the procedure of *Saucier* in this case.

defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right." *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 457 (5th Cir. 2001)).

Here, neither in his petition nor in his briefing does Faulkner specify how defendants allegedly violated his First or Fourteenth Amendment rights or identify the facts that he relies on to support these claims. Nor has he submitted any evidence that would support a finding of a constitutional violation.[12] Therefore, Dr. Lakey, Hale, and Holmes are entitled to qualified immunity on Faulkner's constitutional claims.[13]

---

[12]Presumably, with respect to his First Amendment claim, Faulkner intends to pursue a theory of retaliation. Like a Whistleblower Act claim, however, a First Amendment retaliation claim also requires proof of causation. *See Hampton Co. Nat'l Sur., LLC v. Tunica County, Miss.*, 543 F.3d 221, 229 (5th Cir. 2008) (specifying as one element of a First Amendment retaliation claim that "the speech must have motivated the defendant's action"). As discussed above, Faulkner cannot create a genuine issue of material fact on this element.

[13]When, as here, the defendant to a 42 U.S.C. § 1983 claim invokes qualified immunity as an affirmative defense, the burden is on the plaintiff to establish that the defendant is not protected because the official's allegedly wrongful conduct violated clearly established law. *See Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005) (addressing qualified immunity). To prevail, the plaintiff must show "genuine issues of material fact [exist] concerning the reasonableness" of the defendant's conduct. *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001). "Although nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

\*     \*     \*

Accordingly, for the reasons explained, the court grants defendants' October 15, 2008 motion for summary judgment and dismisses this suit by judgment filed today.[14]

**SO ORDERED.**

March 19, 2009.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

-----

> The defendant official must initially plead
> his good faith and establish that he was
> acting within the scope of his discretionary
> authority.  Once the defendant has done so,
> the burden shifts to the plaintiff to rebut
> this defense by establishing that the
> official's allegedly wrongful conduct violated
> clearly established law.

*Id.* (quoting *Bazan*, 246 F.3d at 489 (internal quotation marks and citations omitted), and citing *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997) ("We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." (internal quotation marks omitted))).

[14]The court denies as moot defendants' October 15, 2008 motion to dismiss and December 9, 2008 motion to strike evidence.